**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ansumana S.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

No. 0:26-cv-03371 (KMM/DJF)

**ORDER**

---

This matter is before the Court on Petitioner Ansumana S.'s ("Petitioner" or "Mr. S") Motion to Enforce this Court's September 3, 2026 Order granting in part and denying in part Mr. S's Petition for a Writ of Habeas Corpus. (Mot., Dkt. 25; Order, Dkt. 19 ("September 3 Order").) In his motion, Mr. S argues that Respondents have failed to comply with the Court's September 3 Order, and he asks the Court to "Order that Petitioner's [removal] proceedings be reopened, or in the alternative, that Respondents provide him with a constitutionally adequate reasonable fear interview." (Mot. at 11.) For the reasons that follow, Petitioner's Motion is granted as stated in this Order.

## BACKGROUND

Mr. S is a native and citizen of the Ivory Coast, and he has been ordered removed from the United States. However, in 2006, the immigration court granted his request for withholding of removal to the Ivory Coast. His October 6, 2006 removal order indicates that he is to be removed to "any country other than the Ivory Coast that will accept him." Because he could not be removed from the United States at that time, immigration

authorities released him on an Order of Supervision. He lived his life in the United States without incident during the years that followed. On July 15, 2026, the government revoked Mr. S's Order of Supervision, took him into custody when he reported to a meeting with Immigration and Customs Enforcement agents, and notified him of its intent to remove him to Sierra Leone. Mr. S has no relationship to Sierra Leone, but Respondents advised that Sierra Leone has agreed to accept him and provided diplomatic assurances to the United States that noncitizens removed there will not be subjected to persecution of torture. It is undisputed that no immigration judge has considered any claim that he should not be removed to Sierra Leone based on a fear of persecution. Nor has an immigration judge ("IJ") considered such a fear-based claim for any country other than the Ivory Coast.

In the September 3 Order, this Court found that the government's efforts to remove Mr. S to Sierra Leone did not comply with his rights under the Due Process Clause of the Fifth Amendment. In relevant part, Court entered the following relief in its September 3 Order:

> 2. Respondents are ENJOINED from removing Petitioner to Sierra Leone or to any country not designated on his order of removal without providing him meaningful notice and opportunity to assert a fear-based claim before an immigration judge. Specifically:
>
>    a. Respondents must provide Petitioner with a reasonable fear interview concerning Sierra Leone if he states a fear of removal within 10 days of this Order.
>
>    b. If Respondents determine that Petitioner states a reasonable fear of removal to Sierra Leone, then Respondents must move to reopen his removal proceedings for him to present a claim for withholding

> of removal or deferral of removal under the CAT to an immigration judge[.]
>
> c. If Respondents determine that Petitioner does not state a reasonable fear of removal to Sierra Leone, then Respondents must allow Petitioner 15 days to file a motion to reopen his removal proceedings before removing him.
>
> d. With respect to removal to any other alternate country besides Sierra Leone, Respondents must provide written notice of removal to that country at least 10 days prior to the removal and ask whether Petitioner has a fear of removal to the third country. If the Petitioner expresses such a fear, then Respondents must provide a reasonable fear interview to screen for Petitioner's fear of persecution and torture. If Petitioner is found to have a reasonable fear of removal to that country, Respondents must move to reopen Petitioner's removal proceedings to allow Petitioner to present a claim for withholding of removal or deferral of removal under the CAT to an immigration judge. If Petitioner is found not to have such a fear, Respondents must allow an additional 15 days from such determination for Petitioner to file a motion to reopen his removal proceedings before removing him.

(Sept. 3 Order at 35–36.) The Clerk of Court entered Judgment on September 4, 2026. (Dkt. 20.)

On September 13, 2026, Petitioner expressed a fear of persecution if removed to Sierra Leone. (Dkt. 23-1 at 29–30.) On September 18, 2026, an asylum officer interviewed Mr. S about his concerns with being removed to Sierra Leone, and on September 21, the asylum officer concluded that Mr. S failed to demonstrate a reasonable fear of persecution or torture if removed there. (*See* Dkt. 23; Dkt. 23-1.) Mr. S asserts neither he nor his counsel received advance notice of the asylum interview. (Mot. at 2, ¶ 7.) Although the asylum

officer found Mr. S was credible, the officer made a negative reasonable-fear determination based on Mr. S's statements that he had not experienced past harm by anyone affiliated with Sierra Leone and his inability to point to specific or direct threats of harm made toward him. (Dkt. 23-1 at 27–28.)

Following the September 21 interview and negative reasonable-fear determination, Mr. S told the asylum officer that he wanted the decision to be reviewed by an IJ. (Dkt. 23-1 at 2; Mot. at 3, ¶ 8.) ICE agents informed Mr. S his case would be reviewed by an IJ at a hearing on October 8, 2026, but the IJ did not connect to the virtual hearing. (Mot. at 3, ¶¶ 9–10.) Afterward, the DHS immigration court electronic docketing system indicated that DHS had failed to prosecute the case. (Mot. at 3, ¶ 10; *id.*, Ex. A.) Another attempt to have an IJ review Mr. S's case on October 15 ended the same way. (*Id.* at 3 ¶ 11; *id.*, Ex. B.)

## DISCUSSION

### ***Third Country Removal***

This case involves the government's increased use of a practice commonly referred to as third-country removal. Such third-country removals typically occur when a noncitizen has been ordered removed from the United States to a particular location, but the government is unable to deport them there for a variety of reasons. Then, sometimes years after the removal proceedings have closed, the government wishes to remove the person to a country other than the one designated in the removal order. This is not prohibited under federal law because, as this Court explained in its September 3 Order, "even when a person has demonstrated that he should not be removed to a specific country and obtains relief in the form of withholding of removal to that country under the CAT, he still may be removed

at any time to another country where he or she is not likely to be tortured." (Sept. 3 Order at 8 (quoting *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020)) (cleaned up).) At the same time, "[f]ederal law expressly prohibits DHS from removing an alien to a country if the DHS Secretary decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." (*Id.* at 7 (quoting 8 U.S.C. § 1231(b)(3)(A)) (cleaned up).) And during removal proceedings, the law requires an IJ "to review any negative determination by USCIS of a noncitizen's reasonable-fear claim regarding a potential destination of removal." (*Id.* at 28.) This process ensures that a noncitizen's fear-based claims regarding removal to a particular destination are vetted through a neutral adjudicative process where he or she has a truly meaningful opportunity to be heard.

The record before the Court demonstrates that Mr. S's fear-based claim regarding removal to Sierra Leone has not gone through such a process. The Court will require it now. In part, the lack of a meaningful opportunity to be heard appears to be a problem created by the fact that the Court did not expressly require review of Mr. S's reasonable-fear interview by an IJ. Respondents are correct that the September 3 Order did not include such a provision. Instead, the Court made IJ review contingent upon Petitioner's filing a motion to reopen in the event of a negative reasonable-fear determination by a USCIS asylum officer. Respondents are also correct that, after the September 21 interview and the asylum officer's findings, the record does not demonstrate that Mr. S has filed a motion to reopen. But Mr. S plainly asked for an IJ to review the asylum officer's decision, and his

case was twice scheduled for review in a hearing before an IJ following the asylum officer's reasonable fear determination. That hearing never took place.

Since the September 3 Order, in a case involving similar issues, the Court has explained why making IJ review of fear-based claims contingent upon the outcome of a motion to reopen in insufficient to satisfy due process. *Ahmed S. v. Blanche*, No. 22-cv-2265 (KMM/DLM), 2026 WL 2996562, at *6 (D. Minn. Oct. 6, 2026) (citing *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019); *Portilla v. Warden of the Golden State Annex ICE Det. Facility*, No. 1:26-cv-00494-EPG-HC, 2026 WL 2339445, at *5 (E.D. Cal. Aug. 12, 2026)). In this case, the September 3 Order also notes that the *Aden* court held "giving a petitioner an opportunity to file a motion to reopen – a motion which seeks discretionary relief that may be denied without any sort of hearing – is not an adequate substitute for the process that is due in these circumstances." (Sept. 3 Order at 33 (quoting *Aden*, 409 F. Supp. 3d at 1010).) And the Court "reject[ed] Respondents' suggestion that reopening of Petitioner's immigration proceedings for further consideration of fear-based claims is unwarranted." (*Id.* at 34.)

In other words, the Court should not have made IJ consideration of Mr. S's fear-based claims in a reopened proceeding contingent upon the filing of a motion to reopen. And even though the September 3 Order did so, practically speaking, Mr. S's requests for IJ review of the negative reasonable-fear determination have not been heard by an IJ. Therefore, the Court will not fault Petitioner for not yet having filed such a motion to reopen. The Court concludes that "[d]ue process requires that Petitioner receive a full and fair hearing of his fear-based claims in front of a neutral adjudicator" – in this case an IJ.

*Portilla*, 2026 WL 2339445, at *5. Accordingly, the Court will modify the September 3 Order to enjoin Petitioner's removal to Sierra Leone unless and until Respondents provide him with a meaningful opportunity to respond to such a removal in reopened removal proceedings with a hearing before an immigration judge. And the Court clarifies that the reopened proceedings required by this Order are not for the purpose of contesting the underlying order of removal, but only to adjudicate Mr. S's fear-based claims concerning third-country removal to Sierra Leone.

**Zadvydas *and Significant Likelihood of Removal***

In a briefing Order issued on October 28, 2026, the Court observed that Petitioner challenged his continuing detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), but it had denied relief on that basis in the September 3 Order. (Dkt. 26.) In denying the claim, the Court held that "[u]nder *Zadvydas*, [Petitioner] cannot be detained indefinitely, but give the relatively short duration of his detention in this case and the efforts Respondents have made to remove him, there is no basis for the Court to conclude, on this record, that there is no significant likelihood of removal in the reasonably foreseeable future." (Sept. 3 Order at 34.)

In response to the briefing order requesting additional briefing on this issue, Mr. S argues that his removal is not likely to occur soon because he cannot be removed to Sierra Leone without due process, his detention has gone on for more than two months since the Court's September 3 Order, and his entire time in his current detention is now over 120 days. (Dkt. 28 at 8.) Further, he asserts that Respondents did not act diligently to complete a reasonable fear interview and to permit review before an immigration judge. (*Id.*)

Respondents argue that Mr. S has not made the initial showing required by *Zadvydas* – that there is "good reason" to believe his removal is no longer significantly likely to occur in the reasonably foreseeable future. (Dkt. 27 at 5.) Further, Respondents argue that the only thing standing in the way of Petitioner's removal to Sierra Leone is the Court's Order preventing removal, such that the Court has "create[d] the very circumstances … that would lead to a finding" that removal is unlikely, which "ignore[s] the burden shifting requirements of *Zadvydas*[.]" (*Id.*) Finally, Respondents argue that if the Court finds Petitioner has satisfied his initial burden, they have not been given an opportunity to rebut that showing, and request an opportunity to do so. (*Id.* at 5 & n.3.)

The Court finds that additional development of the record and legal argument is required. *Zadvydas* provides that the government can detain a person ordered removed from the United States beyond the 90-day removal period for an additional 90 days, and this six-month period of detention to execute the order of removal is "presumptively reasonable." 533 U.S. at 701. Mr. S has been in detention for 126 days, which remains shy of a presumptively reasonable 180 days of post-removal-order detention. But the Court concludes that does not foreclose his *Zadvydas* claim. *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–98 (D.N.J. 2025) (concluding that the six-month presumption of legitimate detention under *Zadvydas* is rebuttable and collecting cases). And since the Court's September 3 Order, the likelihood that Mr. S will be removed in the reasonably foreseeable future appears to have gone down. Here, the Court believes that Mr. S has made a sufficient initial showing to support the conclusion that his removal, though certainly not impossible, is not significantly likely to occur in the reasonably foreseeable future.

While the record indicates that Respondents appear willing to remove Mr. S to Sierra Leone, and they have stated that Sierra Leone is willing to accept him, Respondents have yet to provide him a meaningful opportunity to have his fear-based claim concerning such removal heard by a neutral decisionmaker. Respondents appear to take the position that Petitioner's initial burden has not been met because the Court's September 3 Order enjoins his removal. The Court disagrees. It is Respondents' failure to provide Mr. S with due process that necessitated this Court's intervention, and the prohibition on his removal imposed by this Court is to ensure that he receives a meaningful opportunity to be heard on his fear-based claims before he is removed. It is not the sort "obstruction" by a detainee that has been held to cut against the availability of relief under *Zadvydas*. Again, federal law prohibits removal of a noncitizen to a destination where he is likely to be persecuted or tortured.

Since the September 21, 2026 interview and the asylum officer's negative reasonable-fear determination, Respondents have twice failed to provide the hearing before an IJ that Mr. S requested, after telling Mr. S it was about to take place. Respondents cannot lawfully remove Mr. S to Sierra Leone without affording him the process he is entitled to receive under the Constitution and laws of the United States. The mere possibility of a future removal is "not the same as a significant likelihood that he will be [removed] in the reasonably foreseeable future." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) (citing *Zadvydas*, 533 U.S. at 701); *Sanchez v. Noem*, No. 5:25-CV-00104, 2025 WL 3760317, at *10 (S.D. Tex. Nov. 14, 2025) ("Some possibility of an eventual removal is not the same as a significant likelihood that removal will occur in the reasonably

foreseeable future.”). The circumstances of this case, therefore, support the conclusion that Mr. S has met his initial burden.

That said, the Court finds that Respondents should be given an opportunity to rebut Petitioner’s showing. The briefing in this matter prior to the Court’s September 3 Order was expedited, and the time for responding to the October 28 Briefing Order’s instruction to address the *Zadvydas* issue was short. Therefore, the Court sets a briefing schedule for Respondents to rebut Petitioner’s showing that there is good reason to believe his removal is not reasonably likely in the foreseeable future.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Petitioner’s Motion to Enforce (Dkt. 25) is **GRANTED** as stated herein.

2. The prohibition on Petitioner’s removal in the Court’s Order dated September 3, 2026 is modified as follows. Respondents shall not remove Petitioner to Sierra Leone or any other country not designated in his order of removal unless and until Respondents provide him with a meaningful opportunity to present his fear-based claims in a reopened proceeding before an immigration judge. The reopened proceeding required by this Order is not for the purpose of contesting Petitioner’s underlying order of removal, but to adjudicate his fear-based claims concerning third-country removal to Sierra Leone or another country not designated in his order of removal.

3. **On or before December 4, 2026**, Respondents shall file a memorandum of law and any supporting declarations and exhibits sufficient to rebut Petitioner’s showing under *Zadvydas* that there is good reason to believe that his removal is not significantly likely in the reasonably foreseeable future.

4. **On or before December 18, 2026**, Petitioner shall file a reply in support of his *Zadvydas* claim.

Date: November 19, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge